ORAL ARGUMENT NOT YET SCHEDULED

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

Nos. 22-1271 (and consolidated cases)

---

UNITED STATES SUGAR CORPORATION, *et al.*,
*Petitioners*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,
*Respondent*.

---

PETITION FOR REVIEW OF FINAL ADMINISTRATIVE ACTION OF THE
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY

---

**PROOF BRIEF OF RESPONDENT-INTERVENOR SIERRA CLUB**

---

James S. Pew
Earthjustice
1001 G Street, NW, Suite 1000
Washington, DC 20001
(202) 667-4500
jpew@earthjustice.org

**DATED: October 10, 2023**        *Counsel for Sierra Club*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1)(A), Sierra Club submits this Certificate as to Parties, Rulings, and Related Cases.

## (A) Parties and *Amici*

### (i) Parties, Intervenors, and *Amici* Who Appeared in the District Court

This case is a petition for review of final agency action, not an appeal from the ruling of a district court.

### (ii) Parties to This Case

Petitioners:

| | |
|---|---|
| 22-1271 | U.S. Sugar Corporation |
| 22-1302 | American Forest and Paper Association, American Wood Council, and Council of Industrial Boiler Owners |
| 22-1303 | California Communities Against Toxics, Coalition For A Safe Environment, Sierra Club, and Utah Physicians for a Healthy Environment |

Respondents:

Respondent in the above-captioned case are the United States Environmental Protection Agency ("EPA") and Michael S. Regan, in his official capacity as Administrator of the EPA.

Intervenors:

Sierra Club has been granted leave to intervene in support of respondent in No. 22-1271. American Forest and Paper Association, American Chemistry

Council, American Iron and Steel Institute, American Wood Council, Coalition for Responsible Waste Incineration, and Council of Industrial Boiler Owners have been granted leave to intervene in support of respondent in No. 22-1303.

**(iii) *Amici* in This Case**

None at present.

**(iv) Circuit Rule 26.1 Disclosures**

See disclosure statement filed herewith.

**(B) Rulings Under Review**

Petitioners seeks review of the final action taken by EPA in the final rule entitled "National Emission Standards for Hazardous Air Pollutants: Industrial, Commercial, and Institutional Boilers and Process Heaters" and published at 87 Fed. Reg. 60,816 (October 6, 2022).

**(C) Related Cases**

None at present.

# RULE 26.1 DISCLOSURE STATEMENT

Pursuant to Federal Rules of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, Sierra Club makes the following disclosures:

<u>Non-Governmental Corporate Party to this Action</u>: Sierra Club.

<u>Parent Corporations</u>: None.

<u>Publicly Held Company that Owns 10% or More of Party's Stock</u>: None.

<u>Party's General Nature and Purpose</u>: Sierra Club, a corporation organized and existing under the laws of the State of California, is a national nonprofit organization dedicated to the protection and enjoyment of the environment.

# TABLE OF CONTENTS

Page

CERTIFICATE AS TO PARTIES, RULINGS,
AND RELATED CASES ........................................................................ ii

RULE 26.1 DISCLOSURE STATEMENT............................................iv

TABLE OF AUTHORITIES ...............................................................vi

GLOSSARY OF ACRONYMS............................................................ix

STATUTES AND REGULATIONS......................................................1

SUMMARY OF ARGUMENT ............................................................1

ARGUMENT ......................................................................................4

I.      EPA Did Not Retroactively Apply its Revised
New Source Standards. ...........................................................4

II.     Industry's Statutory Interpretation Lacks Merit....................4

A.  Section 112(a)(4) Refutes Industry's Interpretation ......................4

B.  Industry's Reliance on § 112(i) Is Misplaced................................11

C.  EPA's Past Practices Are Irrelevant to the Meaning
of the Statute........................................................................12

III.    Industry's Arguments About the Reasonableness of EPA's Statutory
Interpretation Are Irrelevant and Lack Merit......................................15

CONCLUSION..................................................................................20

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT..................21

CERTIFICATE OF SERVICE ...........................................................22

# TABLE OF AUTHORITIES

<u>CASES</u>                                                      <u>PAGE(s)</u>

*Barnhardt v. Sigmon Coal Co.*,
534 U.S. 438, 462 (2002) ......................................................................17

*Bowen v. Georgetown University Hospital*,
   488 U.S. 204 (1988) ............................................................................ 4

*Burgess v. United States*,
   553 U.S. 124 (2008) ............................................................................2

*Chevron U.S.A., Inc. v. Nat. Res. Def. Council*,
467 U.S. 837 (1984) .................................................................... 13, 15

*Digital Realty Trust, Inc.* v. *Somers*,
   138 S. Ct. 767 (2018) ......................................................................2, 6

*Duncan v. Walker*,
   533 U.S. 167 (2001) ...........................................................................6

*Engine Mfrs. Ass'n v. EPA*,
   88 F.3d 1075 (D.C. Cir. 1996) ..........................................................13

*Env't. Def. v. Leavitt*,
   329 F. Supp. 2d 55 (D.D.C. 2004) .....................................................10

*F.J. Vollmer Co. v. Magaw*,
102 F.3d 591 (D.C. Cir. 1996) ............................................................15

*Indep. U.S. Tanker Owners Comm. v. Dole*,
   809 F.2d 847 (D.C. Cir. 1987) ..........................................................10

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U. S. 241 (2004) ...........................................................................7

*\* Authorities chiefly relied upon marked with asterisks*

*Intel Corp. Investment Policy Committee v. Sulyma,*
140 S. Ct. 768 (2020) ...................................................7

*Mobile Relay Assocs. v. FCC,*
475 F.3d 1 (D.C. Cir. 2006)...........................................4

*Montclair v. Ramsdell,*
107 U.S. 147 (1883) ......................................................6

*Nat'l Parks Conservation Ass'n v. Jewell,*
62 F. Supp. 3d 7 (D.D.C. 2014)...................................10

\* *New Jersey v. EPA,*
517 F.3d 574 (D.C. Cir. 2008)...................... 13, 14, 15, 19

*NRDC v. EPA,*
489 F.3d 1250 (D.C. Cir. 2007 ........................... 10, 18

*Russello v. United States,*
464 U.S. 16 (1983) ......................................................8

*Sierra Club v. EPA,*
21 F.4th 815 (D.C. Cir. 2021)......................................13

\* *Tanzin v. Tanvir,*
141 S. Ct. 486 (2020) ........................... 2, 5, 9, 10, 17

*TRW v. Andrews,*
534 U.S. 19 (2001) ......................................................6

*U.S. Sugar v. EPA,*
830 F.3d 579 (D.C. Cir. 2016).....................................18

*United States v. Menasche,*
348 U.S. 528 (1955) ....................................................7

*Util. Air Regul. Grp. v. EPA,*
573 U.S. 302 (2014) ....................................................6

*Whitman v. Am. Trucking Ass'ns,*
  531 U.S. 457 (2001) ...................................................................14

## STATUTES

42 U.S.C. § 7411(a)(2) ..................................................................8

42 U.S.C. §7412(a)(2)(1970) ...........................................................7

\* 42 U.S.C. § 7412(a)(4) ...................................1, 2, 3, 5, 6-9, 11-18

42 U.S.C. § 7412(c)(6) ..................................................................19

42 U.S.C. § 7412 (d)(3) .................................................................17

42 U.S.C. § 7412(e)(1)(E) ..............................................................18

42 U.S.C. § 7412(i) ............................................................ 1, 6, 11

42 U.S.C. § 7412(i)(1) ............................................................ 11-12

42 U.S.C. § 7412(i)(2) ............................................................ 11-12

## FEDERAL REGISTER NOTICES

68 Fed. Reg. 1,660 (Jan. 13, 2003) ...............................................9

75 Fed. Reg. 32,006 (June 4, 2010) .............................................10

78 Fed. Reg. 7,138 (Jan. 31, 2013) ..............................................19

87 Fed. Reg. 60,816 (Oct. 6, 2022)................................. 4, 9, 10, 12, 19

# GLOSSARY OF ACRONYMS

The Act                    Clean Air Act

EPA or the agency          U.S. Environmental Protection Agency

## STATUTES AND REGULATIONS

Pertinent statutes are contained in an addendum at the end of this brief.

## SUMMARY OF ARGUMENT

Industry Petitioners' main argument is that the challenged rule unlawfully applies "new source" emission standards to boilers that commenced construction before this rule was proposed on August 24, 2020. Industry Br. at 19-35. In fact, the Clean Air Act not only allows Respondent (EPA or "the agency") to apply new source standards to these boilers, but requires it. Section 112(a)(4) expressly defines "new source" to mean "a stationary source the construction or reconstruction of which is commenced after the Administrator first proposes regulations under this section establishing an emission standard applicable to such source." 42 U.S.C. § 7412(a)(4). EPA can "first propose[] regulations … establishing an emission standard applicable" to a source only once, and the agency did so for boilers long before 2020.

Industry Petitioners' various attempts to avoid § 112(a)(4)'s new source definition lack merit. Because the challenged rule governs only future actions, it is not unlawfully retroactive, as Industry Petitioners ("Industry") claims. Section 112(a)(4)'s new source definition is not in conflict with – or trumped by – the provisions in § 112(i) that govern the schedules for compliance with emission standards. Nor did Congress need to write § 112(a)(4) differently to make its intent clear. Section 112(a)(4) is explicit that a new source is one for which construction

1

is commenced before EPA "first" proposes regulations under this section establishing "an" emission standard applicable to such source, 42 U.S.C. § 7412(a)(4), and it is well established that "'[w]hen a statute includes an explicit definition, we must follow that definition,' even if it varies from a term's ordinary meaning." *Tanzin v. Tanvir*, 141 S. Ct. 486, 490 (2020) (quoting *Digital Realty Trust, Inc.* v. *Somers*, 138 S. Ct. 767, 776 (2018) (quoting *Burgess v. United States*, 553 U.S. 124, 130 (2008)).

Industry seeks support from previous rulemakings where, it claims, EPA applied new source standards only to sources built after it proposed a *revised* emission standard rather than to sources built after EPA *first* proposed *an* emission standard applicable to them. EPA's past practices are irrelevant to the meaning of the Clean Air Act. To the extent EPA previously interpreted § 112(a)(4) as allowing such practice, its interpretation was unlawful.

Although EPA agrees that § 112(a)(4) sets out an explicit definition accurately expressing Congress's intent, it responds to Industry's arguments about past practices by also claiming to have "recognized" that § 112(a)(4)'s new source definition "can be considered ambiguous, depending on the circumstances." EPA Br. at 29. The agency asserts discretion to interpret this definition to mean either a source built after EPA first proposes an emission standard applicable to it or a source built after the agency subsequently proposes revisions to that standard. *Id.*

at 47. EPA does not identify any ambiguity in § 112(a)(4) that would give it the discretion it claims. Contrary to EPA's claims (at 29, 47), § 112(d)(4) cannot be read to mean different things "depending on the circumstances" or to ever mean that a new source is one built after EPA proposes *revised* emission standards applicable to a source rather than after EPA *first* proposes *an* emission standard applicable to it. 42 U.S.C. § 7412(a)(4).

Industry also argues "it was never the intent of new source standards" to require retrofits. Congress expressed its intent clearly in the text of the statute and Industry provides no basis for assuming Congress did not mean what it said. Moreover, at the same time it enacted § 112(a)(4) Congress also enacted two other provisions, § 112(d)(6) and § 112(f)(2), that require emission standards for both new and existing sources to be periodically reviewed and revised. 42 U.S.C. § 7412(d)(6), (f)(2). Congress was fully aware that standards applicable to new sources could be strengthened in future revisions when it chose to define new sources by when EPA "first" proposes an emission standard that applies to them. *Id.* § 7412(a)(4).

Industry also argues that requiring boilers built before 2020 to meet new source standards is unfair. Decisions about what is fair are for Congress to make, and Congress expressed its decision in the text of the statute. Further, applying § 112(a)(4) as written and requiring new sources to reduce their toxic pollution

sufficiently to meet new source standards is not unfair. To the contrary, it is an important step toward reducing the unfairness that has been endured for decades by people who have to breathe the toxic pollution from boilers and have never had the protection against this pollution that Congress intended the Clean Air Act to guarantee.

## ARGUMENT

## I. EPA Did Not Retroactively Apply its Revised New Source Standards.

Industry argues incorrectly that the challenged rule "retroactively appl[ies]" revised limits for "new" sources to boilers built before August 24, 2020, the date EPA proposed these limits. Industry Br. at 19-20, 40. To apply retroactively, a rule must "alter[ ] the past legal consequences of past actions." *Mobile Relay Assocs. v. FCC*, 475 F.3d 1, 11 (D.C. Cir. 2006) (quoting *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 219 (Scalia, J., concurring)). The challenged rule does not alter the consequences of past actions; it applies only to actions that will occur in the future. 87 Fed. Reg. 60,816, 60,817 (October 6, 2022), JA____ (setting compliance date three years after the effective date, on October 6, 2025). *See also* EPA Br. at 51-52.

## II. Industry's Statutory Interpretation Lacks Merit.

## A. Section 112(a)(4) Refutes Industry's Interpretation.

Industry's real complaint is that boilers built before 2020 must meet the revised limits for "new" boilers rather than the less protective limits for "existing"

4

boilers. Industry Br. at 19. *Compare* 87 Fed. Reg. at 60,847-60,849 (Table 1,

summarizing limits for "New or Reconstructed Boilers"), JA____-____ *with id.* at

60,849-60,852 (Table 2, summarizing limits for "Existing Boilers"), JA____-____.

Industry argues that any boiler built before the revised limits were proposed on

August 24, 2020 should be treated as an "existing" boiler to which the less

protective limits apply. Industry Br. at 25-26, 40.

Industry's argument is with the Clean Air Act, which expressly defines

"[t]he term 'new source' [to] mean[] a stationary source the construction or

reconstruction of which is commenced after the Administrator first proposes

regulations under this section establishing an emission standard applicable to such

source." 42 U.S.C. § 7412(a)(4). Because EPA "first propose[d] regulations under

this section establishing an emission standard" applicable to boilers long before

August 24, 2020, Industry's argument is foreclosed by the text of the statute. *See*

EPA Br. at 26-27. "'When a statute includes an explicit definition, we must follow

that definition.'" *Tanzin*, 141 S. Ct. at 490.

Industry faults EPA's reliance on § 112(a)(4), claiming "EPA cannot use a

single definition to circumvent the operative provisions of the Clean Air Act…"

Industry Br. at 23. Section 112(a) expressly provides that its definitions apply "for

purposes of this section," 42 U.S.C. § 112(a), "leaving no doubt" that Congress

intended § 112(a)(4)'s definition of new source to apply throughout § 112. *Digital*

*Reality Trust*, 138 S. Ct. at 777. Further, § 112(a)(4)'s "new source" definition is not an "Act-wide" definition that conflicts with a more specific one, as Industry suggests. Industry Br. at 23 (citing *Utility Air Regulatory Group v. EPA*, 573 U.S. 302, 316-320 (2014)). To the contrary, it is the definition Congress crafted specifically for § 112, and no other definition of "new source" exists for this section of the statute.

Industry also claims that defining new sources by reference to the date an emission standard is first proposed is "obviously unfair" and would conflict with § 112(i). Industry Br. at 23. Industry's misreading of § 112(i) and mistaken belief that there is a conflict between § 112(i) and § 112(a)(4) are addressed below (at 11-12). The gist of Industry's argument, however, is that the word "first" in § 112(a)(4) should not be given effect. "'It is a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *TRW v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker,* 533 U.S. 167, 174 (2001) (internal quotation marks omitted). *See United States v. Menasche,* 348 U.S. 528, 538–539 (1955) ("It is our duty 'to give effect, if possible, to every clause and word of a statute.'") (quoting *Montclair v. Ramsdell,* 107 U.S. 147, 152 (1883)).

Further, the usual requirement to give effect to all words in a statute applies with particular force to the word "first" in § 112(a)(4). In the Clean Air Act Amendments of 1990, Congress deliberately changed § 112's definition of "new source" by adding this word. Previously, the definition of "new source" just referred to the date "the Administrator *proposes* regulations under this section establishing an emission standard." 42 U.S.C. §7412(a)(2)(1970) (emphasis added). Now, it refers to the date "the Administrator *first proposes* regulations under this section establishing an emission standard." 42 U.S.C. § 7412(a)(4) (emphasis added). This change from language that did not specify which proposal defines a "new source" to language specifying it is EPA's "first" proposal makes Congress's intent especially clear. Industry asks this Court to ignore statutory text and read the statute as though Congress had not amended it. *See Intel Corp. Investment Policy Committee v. Sulyma*, 140 S. Ct. 768, 779 (2020) ("When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect.") (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U. S. 241, 258–259 (2004)).

Moreover, by seeking to write "first" out of § 112(a)(4), Industry effectively asks the Court to apply the new source definition in § 111 instead of the one in § 112. Section 111(a)(2) defines "new source" as "any stationary source the construction or modification of which is commenced after the publication of

regulations (or, if earlier, proposed regulations) prescribing a standard of performance under this section which will be applicable to such source." 42 U.S.C. § 7411(a)(2). Like the pre-1990 version of § 112, § 111(a)(2) does not make clear which regulations or proposed regulations define a "new source." Section 112(a)(4) does make this clear by specifying that a new source is one built after EPA "*first* proposes regulations under this section establishing *an* emission standard." 42 U.S.C. § 7412(a)(4) (emphasis added). "[W]here Congress includes particular language in one section of a statute but omits it in another ..., it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (citation and internal quotation marks omitted).

Industry's last argument addressing § 112(a)(4) is that, if "first proposes" has any meaning it is "[a]t most," that a source is new if it is built "after EPA first proposed particular emission standards applicable" to it. Industry Br. at 23-24. Thus, Industry appears to take the position that "an emission standard," 42 U.S.C. § 7412(a)(4), actually means the "most recent" or "current" emission standard. Industry claims § 112(a)(4) would have to use the word "any" rather than the word "an" to mean what it literally says, that a new source is one built after EPA first proposes regulations establishing an emission standard applicable to it. Industry Br. at 24.

As EPA correctly explains, switching the word "an" for "any" in § 112(a)(4) would not make any difference. EPA Br. at 30-31. Regardless which word is used, the result is the same: the date regulations under § 112 establishing "an" emission standard applicable to a source are "first propose[d]" is the date defining new sources. 42 U.S.C. § 7412(a)(4). Congress's decision to define "new source" by reference to when EPA "first" proposes regulations establishing "an" emission standard – and not when it proposes regulations establishing the most recent or current standard, as Industry would prefer – must be respected. *See Tanzin*, 141 S. Ct. at 490; *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) ("when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.") (citations omitted).

As both Industry and EPA agree, EPA first proposed an emission standard for boilers in 2003. Industry Br. at 25; 87 Fed. Reg. at 60,830/2-3, JA____. *See* 68 Fed. Reg. 1660 (January 13, 2003), JA____.  EPA points out, however, that the final rule it then promulgated in 2004 was vacated in 2007, "void[ing" the standards entirely and restor[ing] the status quo ante." 87 Fed. Reg. at 60,830/2-3, JA____ (citing *NRDC v. EPA*, 489 F.3d 1250 (D.C. Cir. 2007)). EPA argues that, because of that vacatur, "there was arguably no proposal remaining" and the replacement standards it published in 2010 mark its first proposal of boiler

standards. *Id. See* 75 Fed. Reg. 32,006 (June 4, 2010), JA____. *See also* EPA Br. at 27 n. 10.

"When a court vacates an agency's rules, the vacatur restores the status quo before the invalid rule took effect." *Nat. Parks Conservation Assn v. Jewell*, 62 F. Supp. 3d 7, 21 (D.D.C. 2014); *Env't. Def. v. Leavitt*, 329 F. Supp. 2d 55, 64 (D.D.C. 2004); *Indep. U.S. Tanker Owners Comm. v. Dole,* 809 F.2d 847, 854 (D.C. Cir. 1987)). It is not clear from the caselaw that vacatur of EPA's 2004 final rule also had the effect of nullifying the 2003 proposed rule that preceded it and making EPA's subsequent 2010 proposal the "first." The statute is clear, however, that a "new source" is one for which construction commenced after EPA "first proposes regulations … establishing an emission standard" applicable to such source. 42 U.S.C. § 7412(a)(4); *Tanzin*, 141 S. Ct. at 490. Whether vacatur of the 2004 standards means EPA "first propos[ed]" an emission standards for boilers in 2003 or in 2010, a boiler built after 2010 is a "new source" within the plain meaning of § 112(a)(4).[1]

**B.      Industry's Reliance on § 112(i) Is Misplaced.**

Unable to square its contention that sources built before 2020 are not "new sources" with § 112(a)(4)'s "new source" definition, Industry relies on § 112(i).

---

[1] Contrary to Industry's claims (at 25-26), EPA did explain its interpretation of the statute and how it concluded that 2010 was the date it first proposed emission standards for boilers. *See* 87 Fed. Reg. at 60,830/3, JA____.

Industry Br. at 22-23. Industry claims § 112(i) provides "the operative provisions of the Clean Air Act" and "make[s] clear new sources are subject to emission standards in effect (or at least proposed) when the source commences construction." *Id.* at 23.

Section 112(i) says no such thing.  Section 112(i)(1), on which Industry particularly relies (at 20), merely provides that after the effective date of a standard, "no person may construct any new major source or reconstruct any existing major source subject to such emission standard" unless the relevant permitting authority determines that source will comply with the standard. 42 U.S.C. § 7412(i)(1). Far from conflicting with and overriding § 112(a)(4)'s new source definition, these requirements say nothing about what a "new source" is. To be sure, § 112(i)(1) recognizes a source constructed "after the effective date" of a standard is "new," Industry Br. at 20, but § 112(a)(4) makes clear that sources constructed after EPA "first proposes … an emission standard" applicable to such source, are also "new," 42 U.S.C. § 7412(a)(4), and § 112(i)(1) does not provide or suggest otherwise.

Industry also seeks to rely on EPA's allegedly "dispositive" "concession" that § 112(i)(2)'s "Special rule" does not apply here. Industry Br. at 22. That rule provides that, if a new source commences construction after a rule is proposed but before it is promulgated, the source gets three years after the date of promulgation

to comply, provided: (1) the final promulgated rule is more stringent than the proposed rule; and (2), the source complies with the less stringent proposed rule immediately. 42 U.S.C. § 7412(i)(2). Like § 112(i)(1), § 112(i)(2) says nothing about what a new source is. In agreeing that § 112(i)(2) does not apply here, EPA was not making a "concession," Industry Br. at 22, but explaining that § 112(i)(2)'s "Special rule" is irrelevant to whether sources built before 2020 are "new sources." 87 Fed. Reg. at 60,830/2-3, JA____.

## C.  EPA's Past Practices Are Irrelevant to the Meaning of the Statute.

Industry seeks support for its statutory interpretation from EPA's past practice in some prior rules where it claims the agency did not apply new source standards to sources built after it first proposed emission standards applicable to a source but, instead, applied them only to sources built after it later proposed revised standards. Industry Br. at 26-27, 30-32.

As noted above, EPA describes § 112(a)(4)'s definition as "explicit" and "accurately express[ing] the legislative purpose." EPA Br. at 27, 32. Nonetheless, EPA responds to industry's argument about past practices by claiming to have "recognized that the phrase 'first proposes' can be considered ambiguous, depending on the circumstances." *Id.* at 29. EPA further claims it can choose to define new sources by reference to *either* the date it first proposes an emission standard *or* the date of a later proposal if it thinks the subsequent revisions

"involved 'a wholesale revision of the standards.'" *Id.* at 47 (quoting 87 Fed. Reg. at 60,831/2, JA____).

Merely claiming the statute is ambiguous does not make it so. For all the reasons given above (and in EPA's brief at 26-32), the meaning of § 112(a)(4) is "explicit": any source for which construction commences after EPA "first" proposes "an" emission standard applicable to it is a new source. Although EPA may think it is appropriate as a policy matter for the agency to have discretion to reset the new source date "depending on the circumstances," EPA Br. at 29, the agency does not identify any ambiguity in the statute that gives it such discretion. "It is therefore bound" by § 112(a)(4) "because 'for [ ] EPA to avoid a literal interpretation at *Chevron* step one, it must show either that, as a matter of historical fact, Congress did not mean what it appears to have said, or that, as a matter of logic and statutory structure, it almost surely could not have meant it…'" *New Jersey*, 517 F.3d at 582 (quoting *Engine Mfrs. Ass'n v. EPA,* 88 F.3d 1075, 1089 (D.C. Cir. 1996)). *See also Sierra Club v. EPA*, 21 F.4th 815, 828 (D.C. Cir. 2021) ("EPA 'cannot rely on its gap-filling authority to supplement the Clean Air Act's provisions when,' as here, 'Congress has not left the agency a gap to fill.'") (quoting *Natural Resources Defense Council v. EPA*, 749 F.3d 1055, 1064 (D.C. Cir. 2014)).

Moreover, the notion that the statutory definition of "new source" can turn on how significant EPA thinks its revisions to an emission standard are is hopelessly inconsistent with the statutory text. Even the "wholesale revision" of standards or "the calculation of *all new standards*," EPA Br. at 47, does not alter the date when EPA "'*first* propose[d] regulations … establishing *an* emission standard' applicable to the subject source." *Id.* at 26 (quoting 42 U.S.C. § 7412(a)(4)). Once EPA has proposed "an" emission for the "first" time, that date defines new sources under § 112(a)(4), regardless of whether EPA proposes new or revised standards later. Indeed, it defies logic and grammar to claim that EPA can "*first* propose regulations establishing *an* emission standard" applicable to a source more than once. EPA's claimed discretion to interpret § 112(a)(4) differently in different rulemakings and advance at will an interpretation that defies the statutory text "substitut[es] EPA's desires for the plain text" of the statute and "'completely nullifies [a] textually applicable provision[] meant to limit its discretion.'" *New Jersey*, 517 F.3d at 582-583 (quoting *Whitman v. Am. Trucking Ass'ns,* 531 U.S. 457, 485 (2001)).

In short, EPA's past practice does not support Industry's statutory interpretation. Rather, to the extent EPA's prior regulations defined "new source" to mean something different than a source for which construction commenced after it "first proposes … an emission standard," they contravened § 112(a)(4). 42

U.S.C. § 7412(a)(4). As this Court has held repeatedly, "merely applying an unreasonable statutory interpretation for several years" does not "transform it into a reasonable interpretation." *New Jersey*, 517 F.3d at 583 (quoting *F.J. Vollmer Co. v. Magaw,* 102 F.3d 591, 598 (D.C. Cir. 1996)).

**III.    Industry's Arguments About the Reasonableness of EPA's Statutory Interpretation Are Irrelevant and Lack Merit.**

Industry argues that EPA's statutory interpretation is unreasonable because it differs from the interpretation EPA advanced in prior § 112 rules. Industry Br. at 27, 30-34. Courts embark upon the second step of the Chevron analysis, however, only if Congress has left a "gap for the agency to fill," providing the agency authority "to elucidate a specific provision of the statute by regulation." *Chevron U.S.A. v. NRDC,* 467 U.S. 837, 843–44 (1984). Because § 112(a)(4) explicitly defines "new source" to mean a source for which construction commences after EPA "first proposes regulations under this section establishing an emission standard," there is no gap to fill and the Court has no occasion to determine whether EPA's interpretation is reasonable as well as being compelled by § 112(a)(4)'s plain meaning. *See Sierra Club*, 21 F.4th at 828. Even if § 112(a)(4) were not explicit, however, the only reasonable interpretation is the one consistent with § 112's text and ordinary meaning and applied by EPA in this rulemaking. *See* EPA Br. 26-27; *supra* at 4-11.

Because § 112(a)(4) is explicit, the Court also has no reason to address Industry's other claims that "EPA's Interpretation of 'First Proposed' Is Not Reasonable." Industry Br. at 27-35. Further, these arguments are either irrelevant to statutory interpretation, lacking in merit, or both.

Industry argues that this Court's prior remand in *U.S. Sugar* did not require EPA to revise the hydrogen chloride standard for new sources. Ind. Br. at 27-29. Whether EPA revised the hydrogen chloride standard in response to the *U.S. Sugar* remand, another remand, or no remand is wholly immaterial to whether EPA's interpretation of § 112(a)(4) is reasonable, and Industry offers no discernable explanation of how it might be relevant. In any case, Industry's argument lacks merit for the reasons given by EPA (at 49-51).

Industry also complains that the challenged new source standards will require retrofits and it "was never the intent of the new source standards" to do so. Industry Br. at 30. According to Industry, the stricter minimum stringency ("floor") requirements that § 112(d)(3) provides for new sources should apply only to sources that can incorporate more effective pollution controls into their design when they are being built from scratch. *Id.* at 30-34. Industry cites to previous EPA rules in which it claims the agency advances similar arguments. *Id.* Such policy arguments, whether advanced by Industry or EPA, are irrelevant to statutory interpretation. *See, e.g.*, *Barnhardt v. Sigmon Coal Co.*, 534 U.S. 438, 462 (2002)

("We will not alter the text in order to satisfy the policy preferences of the Commissioner.").

Further, Congress clearly expressed its intent in § 112(a)(4)'s explicit definition. That intent is that sources for which construction commences after EPA first proposes regulations establishing an emission standard applicable to them are new sources and must meet new source standards. 42 U.S.C. § 7412(a)(4), (d)(3). *See Tanzin*, 141 S. Ct. at 490.

Moreover, the context and history of § 112(a)(4) confirm Congress meant what it said. Congress revised § 112's definition of "new source" to add the word "first" in the same 1990 Amendments in which it enacted § 112(d)(6) and § 112(f), both of which require § 112 standards to be periodically reviewed and updated. 42 U.S.C. § 7412(d)(6), (f)(2). Thus, Congress was fully aware that the standards EPA "first propose[d]" for new sources could be revised or replaced later. Had Congress wanted such events to reset the new source date, it could have written § 112(a)(4) to either require or allow EPA to reset the new source date when it revises standards. Instead, Congress did just the opposite: it amended § 112(a)(4) to make clear that "new source" means a source for which construction commences after EPA "first" proposes regulations establishing an emission standard applicable to it. 42 U.S.C. § 7412(a)(4).

Industry also argues that requiring the owners of boilers that have already been built to meet revised standards that may require them to retrofit their boilers with better control technology is unfair. Industry Br. at 34-35. Intervenors agree with EPA that there is no unfairness in requiring industry to install better control technology or reduce pollution, fairness is an issue for Congress to decide, and Congress expressed its decision in the text of the statute. EPA Br. at 39-42.

Moreover, Industry Petitioners' selective concerns about fairness omit any mention of what is fair to the people who are exposed to industrial boilers' toxic emissions. Although the statutory deadline for lawful emission standards passed almost 23 years ago, 42 U.S.C. § 7412(e)(1)(E), EPA has never promulgated standards that satisfy the Clean Air Act for this category. Both of EPA's prior standards have been found unlawful by this Court. *See NRDC*, 489 F.3d 1250 (vacating EPA's 2004 standards as unlawful); *U.S. Sugar v. EPA*, 830 F.3d 579 (D.C. Cir. 2016) (remanding EPA's 2013 standards as unlawful). And with each set of unlawful standards has come more delay. Thus, for 23 years – and still counting – intervenors' members and other Americans have been deprived of the protection against toxic pollution that Congress intended the Clean Air Act to guarantee. *See New Jersey*, 517 F.3d at 578 (discussing the 1990 Amendments to the Act's air toxics provisions).

As a result, intervenors' members and others continue to suffer exposure to hazardous air pollution from which they should have been protected long ago. In the aggregate, boilers emit approximately 1900 tons of arsenic, lead, and other toxic metals each year and more than 17,000 tons of hydrogen chloride. EPA-HQ-OAR-2002-0058-3383, App. B-5, JA____; 78 Fed. Reg. 7138, 7,154 (January 31, 2013), JA____ (showing anticipated emission reductions from 2013 rule); 87 Fed. Reg. at 60,833-60,834 (Table 6, showing small anticipated incremental reductions from Remand Rule). They also emit mercury, dioxins, polychlorinated biphenyls (PCBs), and other hazardous air pollutants that Congress singled out in § 112(c)(6) of the Clean Air Act because of their exceptional toxicity and tendency to accumulate in the body tissue of people and animals. *See* 42 U.S.C. § 7412(c)(6); EPA-HQ-OAR-2002-0058-3383, App. B-5, JA____; 78 Fed. Reg. at 7,154, JA____.

Environmental Intervenors' standing declarants provide a reminder of the impacts that boilers' pollution has on people's daily lives. Rhonda Roff, for example, lives near the allegedly "state-of-the-art" boiler U.S. Sugar operates at its Clewiston, Florida sugar refinery, Industry Br. at 10. Roff Decl. at ¶ 2. Ms. Roff states that, when she goes to Clewiston, she regularly encounters "yellow gray clouds of smoke" that burn her nose and throat and have a "strong unpleasant odor." *Id.* at ¶ 7. Requiring U.S. Sugar to finally bring its clouds of toxic smoke

under control is not unfair; it is an example of what Congress intended the Clean Air Act to accomplish.

## CONCLUSION

The Court should deny Industry's petition for review.


DATED: October 10, 2023

Respectfully submitted,

*/s/ James S. Pew*
James S. Pew
Earthjustice
1001 G Street, NW, Suite 1000
Washington, DC 20001
(202) 667-4500
jpew@earthjustice.org

*Counsel for Sierra Club*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

Counsel hereby certifies, in accordance with Federal Rules of Appellate Procedure 32(a)(7)(B) that the foregoing **Proof Brief of Respondent-Intervenor Sierra Club** contains **4,542**, words, as counted by counsel's word processing system, and thus complies with the 4,550 word limit, pursuant to Court Order Document Number 2004070 dated June, 20, 2023.

Further, this document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) & (a)(6) because this document has been prepared in a proportionally spaced typeface using **Microsoft Word 2016** using **size 14 Times New Roman** font.

DATED: October 10, 2023

*/s/ James S. Pew*
James S. Pew

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of October, 2023, I have served the

foregoing **Proof Brief of Respondent-Intervenor Sierra Club**, including the

Addendum thereto, on all registered counsel through the court's electronic filing

system (ECF).

*/s/ James S. Pew*
James S. Pew
